# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MISSISSIPPI
### GREENVILLE DIVISION

**MISSISSIPPI STATE DEMOCRATIC PARTY,**
**AND MISSISSIPPI STATE DEMOCRATIC**
**PARTY EXECUTIVE COMMITTEE,**                                         **PLAINTIFFS,**

**VS.**                                         **CIVIL ACTION NO. 4:06CV29-P-B**

**HALEY BARBOUR, GOVERNOR; JIM HOOD,**
**ATTORNEY GENERAL; ERIC CLARK, SECRETARY**
**OF STATE, IN THEIR OFFICIAL CAPACITIES**
**AS MEMBERS OF THE MISSISSIPPI BOARD OF**
**ELECTION COMMISSIONERS,**                                         **DEFENDANTS.**

## <u>MEMORANDUM OPINION</u>

These matters come before the court upon the defendants' motion for summary judgment [30-1] and the plaintiffs' motions for judicial notice [34-1 and 35-1] and cross-motion for summary judgment [38-1]. After due consideration of the motions and the responses filed thereto, the court is prepared to rule.

## I. FACTUAL BACKGROUND

On February 10, 2006 the plaintiffs filed their Complaint in which they seek a judgment declaring that Mississippi's primary elections statute, Miss. Code Ann. § 23-15-575, unconstitutionally infringes on the Mississippi Democratic Party and the Mississippi State Democratic Party Executive Committee's First Amendment right of association. More specifically, the plaintiffs seek a judgment (1) declaring Miss. Code Ann. § 23-15-575 (1972) unconstitutional; (2) declaring the Mississippi Attorney General's *Hemphill Opinion*, 2003 WL 356426 (Miss. A.G.

January 16, 2003) inconsistent with U.S. Supreme Court's decision in *California Democratic Party v. Jones*, 530 U.S. 567, 572 (2000); and (3) "declaring Mississippi's primary system unconstitutional to the extent that it places upon the general election ballot as the nominee of the Party for any office the name of an individual who has been selected through a voting system in which the Party has been deprived of the ability to limit participation in nominee selection to those the Party has determined should be included." Complaint, Prayer for Relief, ¶ 3.

In other words, the plaintiffs argue that the current primary system in Mississippi is unconstitutional because without party registration or any other way to enforce § 23-15-575, the Democrats have no mechanism to prevent non-Democrats from voting in their primaries thereby allowing the possibility of party-raiding  – *i.e.*, when dedicated members of one party vote in the primary of an opposing party in order to alter the outcome of the primary in favor of their own party's candidate in the resulting general election.

The plaintiffs also seek an injunction permanently restraining the State defendants from:

1.  conducting any partisan primary without affording the Party reasonable opportunity in advance of that primary to exercise its rights to define participation in that primary;

2.  conducting any partisan primary without implementing a reasonable mechanism for that primary to effectuate the Party's exercise of its right to limit participation in that primary and without providing a means for the Party to verify who participated in its primary and to be able to communicate with its supporters and members who identified themselves by participating in the primary with regard to Party issues, meetings and endorsements; and

3.  encouraging or facilitating, directly or indirectly, party raiding by republican and independent voters in connection with any partisan primary except to the extent expressly authorized by the Party for that primary.

Complaint, Prayer for Relief, ¶ 4.

The complaint also states that the "Plaintiffs bring this action as a class action pursuant to Rule 23(a) and (b)(2), Fed. R. Civ. P., on behalf of a class defined as 'all present and future citizens and registered voters who are members and supporter [sic] of the Mississippi State Democratic Party in the State of Mississippi.'"Complaint, ¶ 5. However, since no motion for class certification has ever been filed during the sixteen months after the filing of the Complaint, any such motion to certify a class is time-barred.

Four days after filing the Complaint, the plaintiffs moved for a preliminary injunction seeking a preliminary ruling granting the relief requested in the Complaint. On May 10, 2006 the court denied the motion for preliminary injunction, concluding that the plaintiffs failed to meet the exacting standards of a preliminary injunction requiring them to demonstrate (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury outweighs any damage the injunction might cause to the non-movant; and (4) that the injunction will not disserve the public interest. *Plains Cotton Co-op Ass'n v. Goodpasture Computer Serv. Inc.*, 807 F.2d 1256, 1259 (5th Cir. 1987), *cert. denied*, 484 U.S. 821 (1987).

Significantly, the court disagreed with the plaintiffs' primary position in their motion for preliminary injunction that the U.S. Supreme Court's decision in *California Democratic Party v. Jones* necessarily invalidated Mississippi's primary elections statute. The primary system at issue in *Jones* was a blanket primary whereas Mississippi has a "semi-closed" or facially[1] closed primary. Under the new system in California, "[a]ll persons entitled to vote, including those not affiliated with

_____

[1] See Classifications of Primary Election Systems section below for discussion of "facially" closed primaries.

any political party, shall have the right to vote ... for any candidate regardless of the candidate's political affiliation." *Jones*, 530 U.S. at 569. "Whereas under the closed primary each voter received a ballot limited to candidates of his own party, as a result of Proposition 198 each voter's primary ballot now lists *every candidate regardless of party affiliation and allows the voter to choose freely among them.*" *Id*. (emphasis added). Unlike the blanket primary in *Jones*, Miss. Code Ann. § 23-15-575 requires: "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates." This language clearly limits participation in a primary to those who "intend" to support that party in the general election as opposed to allowing all voters to pick and choose among all primary candidates regardless of party.

On January 31, 2007 the defendants filed their motion for summary judgment. In their motion the defendants posit that the plaintiffs' claims should be dismissed with prejudice for the following essential reasons: (1) the parties, and not the State defendants, administer Mississippi's partisan primaries; (2) § 23-15-575 permits the Democratic Party to operate a semi-closed primary; (3) while asserting that § 23-15-575 violates the Party's right to exclude voters from its primary, the Party has yet to implement § 23-15-575 ; (4) the Democratic Party has no intention to operate a "closed primary" and is seeking an impermissible advisory opinion; (5) the Democratic Party's claims are not justiciable because the Democratic Party has no injury in fact and their claims are contingent upon future events and therefore not ripe for judicial intervention; (6) the *Jones* decision did not address nor prohibit the primary system used by Mississippi and other states; and (7) § 23-15-575 is a reasonable, nondiscriminatory regulation.

In response the plaintiff's filed a cross-motion for summary judgment, an itemization of undisputed facts, and two motions for the court to take judicial notice of certain factual findings in

prior federal court decisions and historical facts regarding the history of voting in Mississippi.

In their cross-motion for summary judgment, the plaintiffs argue that their claims are justiciable because the plaintiffs have standing and the claims are ripe. The plaintiffs have standing, they argue, because, as the Mississippi Democratic Party and the State Democratic Executive Committee, they have no statutory authority to enforce the closed nature of § 23-15-275 given there is no party registration and no way to verify whether a prospective primary voter "intends" to support the same party in the primary and the general election. The plaintiffs argue that their claims are ripe because they involve the question of whether the current primary system in Mississippi violates the plaintiffs' associational rights given they have no means to enforce § 23-15-275 and this question affects past and future primaries. The plaintiffs ultimately argue that § 23-15-575 is unconstitutional because it infringes on their right to disassociate from non-Democrats who currently have the ability to vote in their party nomination process.

## II. DISCUSSION

### A. Summary Judgment Standards

Summary judgment should be entered only if "[t]here is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the initial burden of demonstrating through the evidentiary materials that there is no actual dispute as to any material fact in the case. *Celotex Corp. v. Catrett*, 477 U.S. 3l7, 323 (l986).

On motion for summary judgment, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In determining whether this burden has been met, the court should view the evidence introduced and all factual inferences from that evidence in the light most favorable to the party opposing the motion. *Id*. Furthermore, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

The summary judgment procedure does not authorize trial by affidavit. Rather, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict." *Anderson*, 477 U.S. at 255. Accordingly, a court may not decide any factual issues found in the record on motion for summary judgment, but if such material issues are present, the court must deny the motion and proceed to trial. *Impossible Elec. Tech. v. Wackenhut Protection Systems*, 669 F.2d 1026, 1031 (5th Cir. 1982); *Environmental Defense Fund v. Marsh*, 651 F.2d 983, 991 (5th Cir. 1981); *Lighting Fixture & Electric Supply Co. v. Continental Ins. Co.*, 420 F.2d 1211, 1213 (5th Cir. 1969).

Under the provisions of Federal Rule of Civil Procedure 56(e), a party against whom a motion for summary judgment is made may not merely rest upon his pleadings, but must, by affidavit, or other materials as provided in Rule 56, inform the court of specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

Summary judgment is not proper if a dispute about a material fact is "genuine," or in other

words the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248. There is no such issue unless the evidence sufficiently supports the non-moving party's version of the facts for a jury to return a verdict in the non-moving party's favor. *Id*. at 249. The relevant inquiry is whether or not there is sufficient disagreement on the facts to submit them to the jury or whether it is so one-sided that one party should prevail as a matter of law. *Id*. at 251. The issue must be genuine, and not pretended, and the evidence relied on to create such an issue must be substantial. *Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir. 1978).

## B. Motions for Judicial Notice

In their motions for judicial notice the plaintiffs request the court to take judicial notice of approximately twenty-eight pages of largely Mississippi federal court factual findings regarding the history of voting in Mississippi with particular emphasis upon the racially discriminatory voting practices in Mississippi's past.

Federal Rule of Evidence 201 provides in pertinent part that with regard to judicial notice of adjudicative facts, "[a] judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to resources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court may take judicial notice, whether requested or not." Fed. R. Evid. 201(c). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d).

It is, however, inappropriate to take judicial notice of factual findings of other courts. *Gray v. Beverly Enterprises–Mississippi, Inc.*, 390 F.3d 400, 408 n. 7 (5th Cir. 2004). In any event, for

evidence to be admissible in general, it must be relevant. Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Fed. R. Evid. 402 ("All relevant evidence is admissible.... Evidence which is not relevant is not admissible.").

The court concludes that not only is the material listed in the motions for judicial notice not appropriate for judicial notice as adjudicative facts, it is not relevant to the issues at hand in the instant lawsuit – *i.e.*, whether or not Miss. Code Ann. § 23-15-575 unconstitutionally infringes on the plaintiffs' First Amendment right to associate or disassociate. In other words, such information does not have "any tendency to make the existence of a fact *that is of consequence* to the determination of the action more probable or less probable than it would be without the evidence." Accordingly, the motions for judicial notice should be denied.

## C. Justiciability

As discussed above, the defendants argue that the plaintiffs' claims are not justiciable because the Democratic Party has no injury in fact and their claims are contingent upon future events and therefore not ripe for judicial intervention . In other words, the defendants allege that the plaintiffs are seeking an impermissible advisory opinion when Art. III, § 2 of the U.S. Constitution limits federal jurisdiction to "cases" and "controversies."

With regard to justiciability, or the propriety of bringing a case or controversy before a federal court, Chief Justice Earl Warren observed:

> [T]he judicial power of federal courts is constitutionally restricted to "cases" and "controversies." As is so often the situation in constitutional adjudication, those two words have an iceberg quality, containing beneath their surface simplicity submerged

complexities which go to the very heart of our constitutional form of government. Embodied in the words "cases" and "controversies" are two complementary but somewhat different limitations. In part those words limit the business of federal courts to questions presented in an adversary context and in a form historically viewed as capable of resolution through the judicial process. And in part those words define the role assigned to the judiciary in a tripartite allocation of power to assure that the federal courts will not intrude into areas committed to the other branches of government. Justiciability is the term of art employed to give expression to this dual limitation placed upon federal courts by the case-and-controversy doctrine.

*Flast v. Cohen*, 392 U.S. 83, 94-95 (1968).

Justiciability requires that litigants have standing and that the cause is ripe for judicial intervention. *Renne v. Geary*, 501 U.S. 312, 320 (1991). Plaintiffs have the burden of establishing standing and ripeness as jurisdictional requirements. *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 546 n.8 (1986).

## 1. Standing

With regard to the standing requirement, the U.S. Supreme Court in *Lujan v. Defenders of Wildlife* wrote:

Over the years, our cases have established that the irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an "injury in fact"– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision."

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-1 (1992) (internal citations omitted; reformatted for convenience).

Before addressing the three standing elements mentioned above, the court finds it prudent to examine the nature of the parties involved in this action. The defendants are the Governor,

Secretary of State, and the Attorney General of the State of Mississippi in their capacities as the three members of the Mississippi State Board of Election Commissioners. Though the State of Mississippi is not specifically named as a defendant, the State is a *de facto* defendant given the named defendants act in their official capacities as representatives of the State.

The named plaintiffs in the instant case are the Mississippi Democratic Party and the Mississippi State Democratic Party Executive Committee. There is a question whether the attorney filing the lawsuit can be said to represent the entire Mississippi Democratic Party while no individual voter is named as a plaintiff. As mentioned above, though the Complaint sought certification of a class consisting of all members of the Mississippi Democratic Party, no motion to certify was ever filed. Thus, the court concluded above that any such motion would be barred as untimely. Nevertheless, the Mississippi State Democratic Party Executive Committee speaks for the Mississippi Democratic Party as a governing arm of the Party. It is undisputed that although the Executive Committee has not voted on whether or not they wish to attempt to enforce § 23-15-575, they did agree to the filing of the case at bar. In response to Defendants' Interrogatory 9 "Identify members of the plaintiffs who hold policy making authority and who support a closed primary," the Plaintiffs answered: "No vote by the Mississippi Democratic Party Executive Committee has been taken to determine which executive committee support [sic] a closed primary. The MDPEC voted to challenge the constitutionality of Miss. Code Ann. § 23-15-575."

Accordingly, the court concludes that the parties are properly aligned.

Turning to standing elements described in *Lujan*, the first requirement is that the plaintiffs demonstrate an "injury in fact"– an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not "conjectural" or "hypothetical." *Lujan*, 504 U.S. at

560. With regard to the legally protected interest at issue, Justice Scalia writing the majority opinion in *Jones* observed:

> [T]he Court has recognized that the First Amendment protects the freedom to join together in furtherance of common political beliefs ... which necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only ... That is to say, **a corollary to the right to associate is the right not to associate**. Freedom of association would prove an empty guarantee if association could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being.

*Jones*, 530 U.S. at 574 (emphasis added; internal citations omitted). Thus, the plaintiffs' legally protected interest alleged to be infringed by § 23-15-575 and the Attorney General Opinions interpreting same is the Party's First Amendment right to disassociate itself from non-members. The Party alleges that their right to disassociate from non-members is infringed by the lack of enforcement mechanisms for § 23-15-575 since there is no party registration nor any mechanism to verify whether the voter in question is a member of the party. This is a concrete and particularized alleged invasion of a legally protected interest. This alleged invasion is also actual and not hypothetical since every time a primary election is conducted in Mississippi, the Party's right to disassociate is implicated.

The second standing element is that there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. *Lujan*, 504 U.S. at 561. The plaintiffs' allegations meet this standard as well since but for the absence of statutory authorization for the Mississippi Democratic Party to require party registration and a means to verify membership at the polls – and keeping in mind the Party's executive committee cannot act unless expressly authorized by the Mississippi Legislature and cannot change

election procedures without preclearance from the Justice Department pursuant to the Voting Rights Act of 1965 – the Mississippi Democratic Party could prevent non-members from voting in their primaries.

The third element – that it must be "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable decision – is likewise met since a favorable decision in this case could result in an invalidation of Mississippi's current primary system, redressing the plaintiffs' complained-of injury.

A similar question of standing was addressed in the Fourth Circuit Court of Appeals' decision in *Miller v. Brown*, 462 F.3d 312, 316- 18 (4th Cir. 2006). The Court in *Miller* held that the state Republican Party and its chairman's action seeking a declaratory judgment that Virginia's open primary law requirements violated the First Amendment right of free association satisfied the standing requirements even though no individual voter was involved.

With regard to the three standing elements, the Court in *Miller* concluded that the plaintiffs established an "injury in fact" because "[t]he allegation of having to associate with members of the other party during their candidate-selection processes unquestionably pleads a constitutional injury." *Miller*, 462 F.3d at 317 (citing *California Democratic Party v. Jones*, 530 U.S. 567, 577-82 (2000)) for the proposition that blanket primaries were unconstitutional because it "forces petitioners to adulterate their candidate-selection process ... by opening it up to persons wholly unaffiliated with the party.") In further regard to the injury in fact element, the Court wrote:

> Focusing on the plaintiffs' injuries reveals that their alleged constitutional injuries are not conjectural or hypothetical. The participation of Democrats in the plaintiffs' upcoming primary is inevitable. ...The plaintiffs' goal to nominate the candidate who best represents the interests of the Republican Party in the 11th Senatorial District is thwarted if the plaintiffs must account for Democrats voting in their primary.

*Miller*, 362 F.3d at 371-318.

As to the causation element, the Court concluded: "The open primary law causes the plaintiffs to associate with Democrats during the candidate-selection process. ... Undoubtedly, a causal connection exists between the open primary law itself and the plaintiffs' alleged injuries." *Miller*, 362 F.3d at 318.

The Court also concluded that the plaintiffs had met the redressibility requirement, writing: "A favorable court decision in this case would allow the plaintiffs to exclude Democrats from participating in their primary and thus eliminate their alleged injuries. ... In this case, the plaintiffs' alleged injuries are redressable and thus satisfy the third component of standing." *Miller*, 262 F.3d at 318.

This court agrees with the Fourth Circuit's analysis in *Miller* and concludes that the plaintiffs in this action have met the standing requirements for justiciability. The court now turns to the ripeness requirement.

**2. Ripeness**

"A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Texas v. United States*, 523 U.S. 296, 300 (1998) (quoting *Thomas v. Union Carbide Agricultural Products Co.*, 473 U.S. 568, 580-581, (1985)). "The doctrine of ripeness prevents judicial consideration of issues until a controversy is presented in 'clean-cut and concrete form.'" *Miller*, 362 F.3d at 318-19 (citing *Rescue Army v. Mun. Court of L.A.*, 331 U.S. 549 (1947)). The burden of proving ripeness falls upon the party bringing suit. *Renne v. Geary*, 501 U.S. 312, 316 (1991). "To determine whether the case is ripe, we balance 'the fitness of the issues for judicial decision with the hardship to the parties of withholding court

consideration.'" *Miller*, 362 F.3d at 319 (quoting *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998)). "A case is fit for judicial decision when the issues are purely legal and when the action in controversy is final and not dependent on future uncertainties." *Id.* "The hardship prong is measured by the immediacy of the threat and the burden imposed on the [plaintiffs] who would be compelled to act under threat of enforcement of the challenged law." *Id.*

With regard to the ripeness requirement in the Virginia Republican Party and its chairman's suit, the Court in *Miller* concluded: "This case is fit for judicial review. The only issue in the case is whether Virginia's open primary law violates the plaintiffs' First Amendment rights to freely associate, which presents a purely legal question." *Id.*

This court once again agrees with the Fourth Circuit in *Miller* and concludes that the instant action meets the ripeness requirement because deciding whether or not Miss. Code Ann. § 23-15-575 unconstitutionally infringes on the Mississippi Democratic Party's right to disassociate non-members from their nomination process does not rest on contingent events, the issue is purely legal and is not dependent on future uncertainties. That is, regardless of whether the Executive Committee or anyone else decides to change Mississippi's primary system, the essential issue at hand in the instant suit is whether § 23-15-575 is constitutional or not.

## D. Classifications of Primary Election Systems

In a discussion involving the constitutionality of Mississippi's primary system, it is important to accurately define and classify the current types of primaries in the United States.

## 1. Open Primaries

Nine states currently have "open" primaries. These primaries are open in the sense that there is no party registration mechanism and any registered voter may choose in which party primary to

vote, but may only vote in one party primary. The Nine states that have classic "open" primaries with no party registration include: Hawaii, Haw. Rev. Stat. § 12-31; Idaho, Idaho Code §§ 34-402, 34-404, 34-904; Michigan, Mich. Comp. Laws §§ 168.575, 168.576; Minnesota, Minn. Stat. § 204D.08(4); Montana, Mont. Code Ann. § 13-10-301(2); North Dakota (which does not have a voter registration system), N.D. Cent. Code § 16.1-11-22; Vermont, Vt. Stat. Ann. Tit. 17, § 2363; Wisconsin, Wis. Stat. §§ 5.37, 6.8; and Missouri, Mo. Ann. Stat. § 115.397.

## 2. Closed Primaries

The majority of states have a "closed" primary. Twenty-nine states have primaries that are closed to voters who are not registered party members.[2] Approximately nine of these closed-primary states have mandatory voter identification requirements for all voters.[3] Among the twenty-nine states with closed primaries, the U.S. Supreme Court in *Clingman v. Beaver*, 544 U.S. 581, 586 n.1 (2005) classified twenty-one of them as "semi-closed" in the sense that the primaries are closed to registered party members and the states authorize the parties to allow independent or unaffiliated voters vote

---

[2]    States with closed primaries and party registration include: Alaska, Alaska St. §§ 15.25.090, 15.05.010, 15.25.014, 15.25.010; Arizona, Ariz. Rev. Stat. § 16-467; California, Cal. Elec. Code Ann. § 13102; Colorado, Colo. Rev. Stat. Ann. § 1-7-201; Connecticut, Conn. Gen. Stat. § 9-431; Delaware, Del. Code Ann., Tit. 15, § 3161; Florida, Fla. Stat. § 101.021; Iowa, Iowa Code Ann. §§ 43.38, 43.41, 43.42; Kansas, Kan. Stat. Ann. § 25-3301; Kentucky, Ky. Rev. Stat. § 116.045; Louisiana, La. Rev. Stat. Ann. § 18:521; Maine, Me. Rev. Stat. Ann., Tit. 21-A, § 141, *et seq*.; Maryland, Md. Ann. Code, Art. 33, § 3-8, *et seq*.; Nebraska, Neb. Rev. Stat. § 32-530; Nevada, Nev. Rev. Stat. § 293.287; New Hampshire, N.H. Rev. Stat. Ann. § 654:7; New Jersey, N.J. Stat. Ann. § 19:23-45; New Mexico, N.M. Stat. Ann. § 1-4-16; New York, N.Y. Elec. Law § 1-104.9; North Carolina, N.C. Gen. Stat. § 163.74; Ohio, Ohio Rev. Code §§ 3503.011, 3513.19; Oklahoma, Okla. Stat., Tit. 26, § 1-104; Oregon, Ore. Rev. Stat. § 247.201; Pennsylvania, Pa. Stat. Ann., Tit. 25, § 2832; Rhode Island, R.I. Gen. Laws, §§ 17-15-21, 17-15-24; South Dakota, S.D. Codified Laws § 12-4-15; Utah, Utah Code Ann. § 20A-3-104.5; West Virginia, W. Va. Code § 3-1-35; and Wyoming, Wyo. Stat. § 22-5-212.

[3] The closed primary states having mandatory voter identification requirements include: Alaska, Arizona, Colorado, Connecticut, Delaware, Florida, Kentucky, Louisiana, and South Dakota.

in their primaries, but not registered members of an opposing party.

### 3. Facially Closed Primaries

In its order denying the plaintiffs' motion for preliminary injunction, this court characterized Mississippi's primary system as "semi-closed" in the sense implied in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 222 n. 11 (1986) which characterized Mississippi along with fifteen other states that "allow a voter previously unaffiliated with any party to vote in a party primary if he affiliates with the party at the time of, or for the purpose of, voting in the primary" as opposed to a classic closed primary.[4] As mentioned above, the Court in *Clingman* characterized "semi-closed" primaries as closed primaries that allow independent or unaffiliated voters to vote in a party's primary, but not members of the opposing party. The Court held in *Clingman* that Oklahoma's semi-closed primary system which only authorizes a party to allow registered party-members and independent voters to vote in that party's primary but does not allow the Libertarian Party to let all voters regardless of party vote in their primary does not infringe the Libertarian Party's right to associate. *Clingman*, 544 U.S. at 598.

To avoid further confusion regarding the term "semi-closed," this court will characterize Mississippi as having a "facially" closed primary because the language of Miss. Code. Ann. § 23-15-57 indicates that the primary is closed  – *i.e.*, "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he

---

[4] In *Tashjian*, 479 U.S. at 222 n.11, the Court noted that "[s]ixteen States allow a voter previously unaffiliated with any party to vote in a party primary if he affiliates with the party at the time of, or for the purpose of, voting in the primary," including: Alabama, Arkansas, Georgia, Illinois, Indiana, Iowa, Massachusetts, Mississippi, Missouri, New Hampshire, New Jersey, Ohio, Rhode Island, South Carolina, Tennessee, and Texas. Since the 1986 decision in *Tashjian*, several states have changed their primary systems – Alaska, Iowa,  New Jersey, New Hampshire, and Rhode Island, for example, have adopted closed systems.

participates" – but there is no party registration as in the other twenty-nine states with closed primaries.

Other states appearing to have facially closed primary systems include: Alabama, Ala. Code § 17-13-7; Illinois, Ill. Comp. Stat. § 5/7-43; Indiana, Ind. Code Ann. § 3-10-1-6; Tennessee, Tenn. Code Ann. § 2-7-115; and Texas, V.T.C.A., Election Code § 162.003.

## 4. Apparently Open Primaries

There are also a few states that are "apparently" open in that these states have previously been characterized in *Tashjian* as neither classically open or closed, but that given the circumstances in each state, their primaries appear open.

Arkansas has voter identification requirements, but party registration is optional. *See* Ark. Code Ann. § 7-5-201; § 7-7-307 (allowing each party to "establish by party rules additional qualifications to those established for by § 7-5-201" while no such additional qualifications have been established). There does not appear to be any statutory requirement in Arkansas requiring party members to vote in their own party's primary.

Georgia does not have party registration and according to Ga. Code Ann. § 21-2-224(d):

> Each elector who makes timely application for registration, is found eligible by the board of registrars and placed on the official list of electors, and is not subsequently found to be disqualified to vote shall be entitled to vote in any primary or election; provided, however, that an elector, voting in the primary or primaries held by a single party for the nomination of candidates to seek public offices to be filled in an election, shall not vote in a primary held by any other party for the nomination of candidates to seek public offices to be filled in the same such election.

Thus, it appears from this statutory language that Georgia has an effectively open primary.

Massachusetts has a "modified" open primary in that they do have party registration but one can be unregistered with a party and still vote in one primary. *See* Mass. Gen. Laws. Ann. ch. 53, §

37.

    South Carolina does not have party registration. Pursuant to S.C. Code Ann. § 7-9-20:

> The qualifications for membership in a certified party and for voting at a party primary election include the following: The applicant for membership, or voter, must be at least eighteen years of age or become so before the succeeding general election, and must be a registered elector and a citizen of the United States and of this State. No person may belong to any party club or vote in any primary unless he is a registered elector. The state convention of any political party, organization, or association in this State may add by party rules to the qualifications for membership in the party, organization, or association and for voting at the primary elections if such qualifications do not conflict with the provisions of this section or with the Constitution and laws of this State or of the United States.

Since no such additional requirements have been implemented by the parties in South Carolina, that state has an apparently open primary.

    In Virginia, "All persons qualified to vote, pursuant to §§ 24.2-400 through 24.2-403, may vote at the primary. No person shall vote for the candidates of more than one party." Va. Code. Ann. § 24.2-530. On remand from the Fourth Circuit in *Miller v. Brown*, 462 F.3d 312 (2006) (after the Fourth Circuit concluded that the plaintiffs had standing), the district court in *Miller v. Brown*, 465 F.Supp.2d 584, 586 (E.D. Va. 2006) characterized Virginia's primary as open. The district court also concluded that the Virginia open primary statute did not on its face unconstitutionally infringe on political parties' associational rights except in the limited circumstance when an incumbent wants to force his party to renominate him only by the method the incumbent selects. *Id*. at 593. The district court's conclusion rested heavily on the fact that Virginia had other means available to parties for effectuate their nomination process, including mass meetings, convention, or party canvas. *Id*. at 591.[5]

---

[5] Unlike the situation in Virginia, the Mississippi Election Code does not authorize the political parties in Mississippi to conduct any other type of nomination process other than by § 23-

**5. Modified Blanket Primary**

Finally, Washington State currently has a "modified blanket" primary, similar to the blanket primary held unconstitutional in *Jones*. The Ninth Circuit Court of Appeals in *Washington State Republican Party v. State of Washington*, 460 F.3d 1108 (9th Cir. 2006) held that the system violated the political parties' association rights. The U.S. Supreme Court granted certiorari in *Washington State Republican Party v. State of Washington*, 127 S.Ct. 1373 (2007).

**E. Constitutionality of Mississippi's Primary**

With regard to the applicable standards in analyzing the constitutionality of state election laws, the U.S. Supreme Court wrote:

> Constitutional challenges to specific provisions of a State's election laws ... cannot be resolved by any 'litmus-paper test' that will separate valid from invalid restrictions. ... [The court] must first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests; it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983); *Tashjian*, 479 U.S. at 214.

**1. Magnitude of Asserted Injury**

Thus, the court will first consider the character and magnitude of the asserted injury to the plaintiffs' First Amendment right to disassociate non-Democrats from their primary elections.

---

15-575's primary election. In other words, Mississippi political parties do not have the option to conduct mass meetings, conventions, or party canvases to nominate their candidates.

The U.S. Supreme Court has clearly indicated that the First Amendment protects the right of political parties to associate with fellow members and to disassociate with non-members. "[T]he First Amendment, among other things, protects the right of citizens 'to band together in promoting among the electorate candidates who espouse their political views.'" *Clingman*, 544 U.S. at 586. "The Party's determination of the boundaries of its own association, and of the structure which best allows it to pursue its political goals, is protected by the Constitution." *Tashjian*, 479 U.S. at 224. "It is beyond debate that freedom to engage in association for the advancement of beliefs and ideas is an inseparable aspect of the 'liberty' assured by the Due Process Clause of the Fourteenth Amendment, which embraces freedom of speech." *Id*. at 214. "[T]he freedom to join together in furtherance of common political beliefs 'necessarily presupposes the freedom to identify the people who constitute the association.'" *Id*. It bears repeating that the U.S. Supreme Court in *Jones* held that "a corollary to the right to associate is the right not to associate," or, in other words, the right to disassociate. *Jones*, 530 U.S. at 574. Furthermore, the "[f]reedom of association would prove an empty guarantee if association could not limit control over their decisions to those who share the interests and persuasions that underlie the association's being." *Id*.

The plaintiffs in this action argue that Miss. Code Ann. § 23-15-575 infringes on their right to disassociate non-Democrats from voting in their primaries because there is no party registration or any means to verify who is a Democrat at the primary election polling place.

Miss. Code Ann. § 23-15-575 provides: "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates."

In response to a letter sent by Christopher D. Hemphill, Esq., Attorney for Noxubee County Board of Supervisors, the Attorney General wrote the *Hemphill Opinion*, 2003 WL 356426 (Miss. A.G. January 16, 2003). With regard to the *Jones* decision, the Attorney General opined:

> Mississippi's primary system is easily distinguished from California's. The basic and defining difference is that California has party registration where each voter must affiliate with a political party or be an independent. Mississippi does not have party registration. Having no party affiliation, candidates and voters in Mississippi are free to choose the primary in which they wish to participate each time primaries are conducted. Therefore, we are of the opinion that Jones is not applicable to the questions posed in your letter.

In response to Question 6: "[I]s it legal for a vote cast in the Democratic primary to be challenged simply because the poll worker or someone from the local Democratic Party alleges that the voter is really a Republican or Republican supporter?" the Attorney General wrote:

> A person's right to vote may be challenged at the polls prior to the casting of the ballot. Section 23-15-571 lists the grounds upon which a person's right to vote may be challenged. Party disloyalty is not among those grounds. However Section 23-15-575 states that "no person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates." We have previously opined that, pursuant to Section 23-15-575, an independent candidate who has a party opponent could be challenged if he attempts to vote in that party's primary. MS AG Op. Blaker (September 7, 1999). Absent such an obvious factual situation, we are of the opinion that the stated intent of the voter would be controlling.

In response to Question 7, "If a vote is challenged for this reason, what is the voter's recourse?" the Attorney General wrote:

> If a voter's right to vote is challenged at the poll it must be done in accordance with Section 23-15-579 which requires the pollworkers to make the determination that it "clearly appears" that the voter is disqualified. Again, the specific reasons for challenging an individual's right to vote is listed in Section 23-15-571 which does not include party disloyalty. While there is no specific statutory recourse for a qualified elector whose right to vote has been illegally denied, he or she may be able to

maintain legal action against an election official who illegally denies that right. Also, a losing candidate may file an election contest and use as a ground for the contest the illegal denial of individuals' right to vote. We also note that Section 97-13-19 makes it a crime for an election official to illegally deprive an individual of his or her suffrage. Said crime is punishable by imprisonment in the penitentiary for a term not exceeding two years.

In response to a letter sent by Rickey L. Cole, Chairman of the Mississippi Democratic Party, the Attorney General issued the *Cole Opinion*, 2003 WL 21962318 (Miss. A.G. July 21, 2003). In his letter, Mr. Cole posited the following three questions:

1) May a poll worker, credentialed poll watcher, or other voter ask an individual attempting to vote in a party primary whether he/she intends to support the nominations made in that primary, in keeping with 23-15-575?

2) If that question is asked, and the prospective voter answers in the negative, may the poll workers consider that response as grounds for a challenge?

3) If that question is asked, and the prospective voter answers in the affirmative or refuses to respond, may the prospective voters ballot still be challenged by a challenger who can demonstrate to poll workers that the prospective voter's intent is not to support the nominations made in that primary, his/her statement or refusal to respond notwithstanding?

In response to three questions involving how the Democratic Party can enforce § 23-15-575, the Attorney General prefaced his responses by noting:

We preface our responses to your questions by noting that it is a crime for a poll worker or other persons to deprive one of his suffrage or to refuse the vote of a qualified elector without honestly considering his qualifications. <u>See</u> Mississippi Code Annotated, Sections 97-13-19 and 97-13-33 (Revised 2000). We further note that Section 23-15-241 requires the election bailiff to insure that all qualified electors have "unobstructed access to the polls." Therefore, voters must not be delayed by anyone as they approach the polls.

With regard to the first two questions, the Attorney General wrote:

With the above in mind and in response to your first question, we find nothing that

would allow a poll worker, poll watcher or another voter to ask a voter if he or she intends to support the nominees of the party once the voter presents himself or herself to vote. Challenges may be made pursuant to Section 23-15-579 only for the reasons listed in Section 23-15-571, and for the reason that the voter does not intend to support the nominees of the party per Section 23-15-575.

If a challenge of a voter is properly initiated in strict accordance with Section 23-15-579 and the voter then openly declares that he or she does not intend to support the nominees of the party, the poll workers could find the challenge to be well taken and mark the ballot "challenged" or "rejected" consistent with the provisions of said statute. On the other hand, if the voter openly declares his or her intent to support the nominees, then a challenge is not proper under Section 23-15-575.

As to the third question, the AG wrote:

In response to your third question, we have previously opined that absent an obvious factual situation such as an independent candidate attempting to vote in a party's primary, the stated intent of the voter is controlling. MS AG Op. Hemphill, (January 16, 2003). No past action by a voter can form the basis of a valid challenge under Section 23-15-571(3)(g) and Section 23-15-575.

The U.S. Department of Justice has informed us that challenging a person's right to vote based on his or her alleged lack of support of party nominees pursuant to Section 23-15-575 would be viewed as a change in practice that requires pre-clearance pursuant to Section 5 of the Voting Rights Act. We urge you to contact the U.S. Department of Justice prior to making such challenges.

In opposition to the plaintiffs' argument that Mississippi's primary statute and the Attorney General Opinions interpreting same are unconstitutional, the defendants counter that the Executive Committee has not voted to change their primary procedures, has not voted to change their qualifications for membership in the Democratic Party's Constitution– which explicitly does not require membership cards,[6] nor have they obtained preclearance from the U.S. Department of Justice

---

[6] Membership in the Democratic Party remains open to "all qualified Mississippi electors who profess to support the principles of the Democratic Party" and "[n]o membership card or dues shall be required of any person as a condition for being a member of this Party." Democratic Const. Art. III, §§ 1, 3.

pursuant to the Voting Rights Act of 1965.[7]

In further regard to the lack of preclearance, the defendants point out that in November 2003, the Department of Justice notified the Democratic Party that its August 2003 request was incomplete and could not be precleared as the submission did not explain the challenge procedures to be used by the Party. More specifically, the DOJ informed the Party that

> [W]e cannot tell from your letter precisely what the procedures are that the Democratic Party plans to implement for challenges based on party loyalty. . . . We have attempted to contact you on a number of occasions, without success, in an effort to obtain clarification of your letter. We have spoken to other members of the Democratic Executive Committee, who generally were unaware of the submission or the proposed procedures. We also would expect that your submission would address the concerns which we raised with you before the August primary election regarding the manner in which some county executive committees were planning to conduct challenges of voters based on party loyalty.
>
> ***
>
> We further note that any voting changes that have been adopted, for which a proper submission is required, are legally unenforceable unless Section 5 preclearance has been obtained.

In reply to these criticisms, the plaintiffs counter that although the Executive Committee has not voted to change their qualifications to include membership cards nor have they voted to change the primary system to fully closed, the Executive Committee did in fact vote to approve the instant suit challenging the constitutionality of Mississippi's primary system. Moreover, the plaintiffs urge

---

[7]Mississippi is a covered jurisdiction under the Voting Rights Act. 42 U.S.C. § 1973b(b). Any proposed change in "qualification, prerequisite, standard, practice, or procedure" must be precleared by either the Attorney General of the United States or by the United States District Court for the District of Columbia prior to implementation. *Lopez v. Monterey County*, 525 U.S. 266, 270-271 (1999) (emphasis supplied); 28 C.F.R. § 51.13. Any changes made by political parties with respect to the conduct of primary elections must be precleared. 28 C.F.R. § 51.7. When submitted to the Attorney General, the Department of Justice has 60 days to approve or reject the change. *Lopez*, 525 U.S. at 270; 28 C.F.R. § 51.9.

that even if the Executive Committee did vote to change membership requirements in their Constitution and even if they submitted a change to the primary system to the Department of Justice and obtained preclearance, the Mississippi Election Code does not authorize the political parties in Mississippi to unilaterally change the primary systems, nor does the Code authorize the parties to require party registration.

Mississippi law regarding the power to change election procedures supports the plaintiffs' position that regardless of what actions the Executive Committee have taken, they can only act when expressly authorized by the Mississippi Election Code. Miss. Code Ann. § 23-15-291 provides: "All nominations for state, district, county and county district officers made by the different parties of this state shall be made by primary elections. All primary elections shall be governed and regulated by the election laws of the state in force at the time the primary election is held." In *Cummings v. Benderman*,, the Mississippi Supreme Court strongly suggested that without specific statutory authority, a political party cannot act, writing:

> The manner in which the State Committee selected Cummings is not authorized in any section of the State's election laws, and there is no provision which gives direction to the State Committee on how to proceed given the set of facts presented in the case *sub judice*. The election procedure or lack thereof in this situation presents a problem which the Legislature, in its wisdom, may want to address.

681 So.2d 97, 103 (Miss.1996). Other language strongly suggesting that a political party's executive committee can only act if expressly authorized by statute can be found in *In re Wilburn*, in which the Mississippi Supreme Court wrote: "[A] court could, if necessary, compel by mandamus an election commission or executive committee to perform its statutory duty upon its failure to do so, or prohibit it by way of injunction or writ of prohibition from exceeding its statutory authority in

some respect; use of an extraordinary writ, however, cannot be extended to actually telling the commission what action to take." 590 So.2d 1381, 1385 (Miss. 1991); *see also Harpole v. Kemper County Democratic Executive Committee*, 908 So.2d 129, 142 (Miss. 2005) ("[C]ounty executive committee members are clothed only with specific statutory authority and function only as arbiters of election law as it applies to an election contest.").

With further regard to the lack of preclearance for any changes in primary elections from the Department of Justice, not only does the Executive Committee not have the authority to implement a closed primary with mandatory party registration, federal courts do not need preclearance from the Justice Department to determine the constitutionality of an election procedure. *Connor v. Johnson*, 402 U.S. 690, 691 (1971) (An interim remedial decree of the United States District Court is not within reach of Section 5 of the Voting Rights Act).

As to the Attorney General's *Hemphill* and *Cole* opinions, the court first observes that these opinions are only advisory and do not constitute binding precedent in the State of Mississippi. Nevertheless, the court recognizes the practical effect such opinions have upon the actions of a political party's executive committee. Although the court agrees with the opinion in *Hemphill* that the actual holding in *Jones* does not automatically invalidate Mississippi's primary system – given that the factual scenarios were clearly inapposite, the court disagrees with the advice given in the *Hemphill* and *Cole* opinions regarding the efficacy of utilizing the challenge provisions to alleviate the Democratic Party's concern that people who actually intend to vote for Republican candidates in the general election will be voting in the Democratic primaries.

Regarding the desire to challenge people who are purporting to vote in a Democratic primary

when in fact they intend to support the Republican party in the general election, Mississippi's challenge procedure found in Miss. Code Ann. § 23-15-571, combined with the actual language of § 23-15-575, does not afford any practical protection. Concerning a challenge based on "party raiding," Section 23-15-571(g) provides that any candidate, poll worker, registered voter, poll watcher, or election manager can challenge a voter on the basis "[t]hat he is otherwise disqualified by law." Presumably, being otherwise disqualified by law would include voting in a primary when the voter intends to support the other party in the general election as prohibited in § 23-15-575. Since there is no party registration and voter identification required for voting in a Mississippi primary, there is no practical way that a party could challenge anyone under § 23-15-571(g) for violating § 23-15-575. On the other hand, the court agrees that it would be inappropriate for someone to ask each voter who he or she "intends" to support in the general election before they are allowed to vote in a primary.

As should be evident, the matter before the court is on one level quite complicated. However, once the penumbra of arguments is cleared away, the core matter for the court to decide is quite simple: Without regard to who can and should change what, either § 23-15-575's primary system unconstitutionally infringes on Mississippi political parties' First Amendment right to disassociate non-members from their nomination process or it does not.

The court concludes that the plaintiffs have met their burden in demonstrating that the character and magnitude of their asserted injury rises to the level of an unconstitutional infringement on their First Amendment right to disassociate. Since the State of Mississippi does not have mandatory party registration, unlike the twenty-nine other States with a closed primary, and since Mississippi does not have mandatory voter identification for all primary elections in order to verify

that the voter in question is in fact a member of the subject party, there is no practical way to enforce § 23-15-575 language requiring that "No person shall be eligible to participate in any primary election unless he intends to support the nominations made in the primary in which he participates."

The court must now turn to the question of whether the State has set forth the precise interests that justifies the burden imposed by its rule.

## 2. State Interests

"The Constitution grants States 'broad power to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl.1, which power is matched by state control over the election process for state offices." *Clingman*, 544 U.S. at 586. "The power to regulate the time, place, and manner of elections does not justify, without more, the abridgement of fundamental rights, such as the right to vote ... or, as here, the freedom of political association." *Tashjian*, 479 U.S. at 214. "States have a major role to play in structuring and monitoring the election process, including primaries." *Jones*, 530 U.S. at 572. "What we have not held, however, is that the processes by which political parties select their nominees are, as respondents would have it, wholly public affairs that States may regulate freely. To the contrary, we have continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution." *Id*.

The defendants argue that its primary election law encourages voter participation, preserves the overall integrity of the electoral process, and encourages increased voter participation. However, as the district court in *Miller v. Brown* correctly observed: "As noble as these goals may be, each of these arguments have been squarely rejected by the Supreme Court as sufficiently compelling to

justify the severe burden of a forced open primary." 465 F.Supp.2d at 594-95 (citing *Jones*, 530 U.S. at 583-585). Although Mississippi does not technically have an open primary as was the case in *Miller* and the primary in *Jones* was a blanket primary, the rejection of the defendants' proffered State interests equally apply in the context of Mississippi's facially closed primary.

Accordingly, the court concludes that the State defendants have not proffered State interests that justify the burden that § 23-15-575 – without party registration and voter identification – imposes on the plaintiff's association rights.

### III. CONCLUSION

For the reasons discussed above, the court concludes that the defendants' motion for summary judgment should be denied, the plaintiffs' motions for judicial notice should be denied, while the plaintiffs' cross-motion for summary judgment should be granted. Since the issues before the court are purely legal in nature, neither party has demonstrated a genuine issue of material fact necessitating a trial.

Though the current primary system in Mississippi may have worked well through the many years Mississippi was effectively a one-party state, it is now unconstitutionally antiquated with the advent of a two-party system in Mississippi. The issue of whether a primary system like that in Mississippi infringes upon Mississippi political parties' First Amendment right to disassociate is one of first impression since the U.S. Supreme Court's decision in *California Democratic Party v. Jones* involved a blanket primary and not one like Mississippi's facially closed system.

The court concludes that the primary system currently in place in Mississippi violates the Mississippi Democratic Party's First Amendment right to disassociate itself from those who are not

in fact affiliates of the Mississippi Democratic Party in Democratic primaries because there is no mechanism in place for the political parties in Mississippi to verify the party affiliation of the prospective primary voter. The Mississippi Election Code does not authorize the Party to institute any substantive changes, including the requirement of party registration and voter identification as a means to verify the identity of a voter in a primary election, which would render moot any attempt by the Mississippi State Democratic Executive Committee to preclear with the Department of Justice, and to vote to implement, the desired changes sought in the instant lawsuit. Though the Executive Committee has not voted to approve any changes to the current primary system, it is significant that it did vote to approve this lawsuit challenging the constitutionality of the current system.

In order to correct this constitutional problem, the State of Mississippi can either (1) keep Miss. Code Ann. § 23-15-575, require mandatory party registration (with the option for a voter to designate him or herself as unaffiliated) and voter photo identification for all primary elections, and consider the option of authorizing the parties to allow unaffiliated voters to vote in their primaries but not registered members of an opposing party; or (2) the State can fashion some other form of primary system that does not infringe on political parties' right to disassociate opposing-party members from possible party-raiding.

The court expresses no opinion on the issue of the party loyalty of a given candidate.

With regard to voter identification, the court notes that the plaintiffs requested in their Complaint that the court enjoin the defendants from not "providing a means for the Party to verify who participated in its primary and to be able to communicate with its supporters and members who

identified themselves by participating in the primary with regard to Party issues, meetings and endorsements." Complaint, Prayer for Relief, ¶ 4. Without a mandatory voter photo identification requirement, there would be no other practical method for the Party to verify who participated in their primary.

A practical scenario that would protect both a political party's right in Mississippi to disassociate from non-members in their primary and Mississippi voters' rights to vote in secure primary elections would include a requirement that all Mississippi voters re-register to vote – including a designation as to whether they are registering as a member of the Democrat, Republican, or other party, or registering as unaffiliated – and a requirement that all voters who show up to vote in a closed primary must have their voter registration card and photo ID that would verify that the voter is in fact who he or she purports to be and that he or she is in fact a registered member of the subject party. Without the requirement of a photo ID, there would be room for dishonesty which would call into question the security of the election process. Indeed, a photo identification requirement would not pose an unreasonable burden upon the citizenry of Mississippi given that many everyday functions of American life require the use of photo identification – *e.g.*, operating a vehicle, opening a bank account, cashing a check, obtaining employment, obtaining a Social Security card, obtaining a U.S. Passport, verification for credit card transactions and use of personal checks at retail establishments, etc.

Though the court believes that voter identification is a crucial addition to mandatory party registration (with the option to register as unaffiliated) to cure the unconstitutional nature of the current version of § 23-15-575, the court is not concluding that voter identification must be used in general elections. That is for the Mississippi Legislature to decide.

This court is ever mindful of the important concept of federalism and the powers reserved to the States by the Tenth Amendment of the U.S. Constitution which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The court is also mindful of the balancing act between the State of Mississippi's constitutional right to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl.1, and the federal interest in ensuring that State election regulations do not infringe other constitutional rights when that interest is properly brought before the jurisdiction of a federal court . Although the States have the right to regulate the time, place, and manner of elections, that power "does not justify, without more, the abridgement of fundamental rights, such as the right to vote ... or, as here, the freedom of political association." *Tashjian*, 479 U.S. at 214. In the case at bar, Mississippi's interests in preserving its present primary system is substantially outweighed by the Mississippi Democratic Party's First Amendment right of association and its corollary right to disassociate.

The court recognizes that it is impractical to expect the Mississippi Legislature to pass, preclear, and implement a new primary system that will include mandatory voter photo identification and party registration (with the option to allow the parties to choose whether or not to permit voters who register as unaffiliated to vote in their primary) before the next primary season beginning August 7, 2007 – less than two months away. However, a deadline must be set. Therefore, the court concludes that the Mississippi Legislature must pass a new primary system that does not run afoul of this court's rulings by no later than April 1, 2008. After passing the appropriate legislation, and before implementing the bills creating the new primary system, the Mississippi Legislature must then apply for preclearance from the Justice Department ten business days later, in no event later than

April 11, 2007. The State shall then update the court seventy days after submission of the plan for preclearance, in no event later than June 10, 2007, informing the court of the Justice Department's preclearance decision.

With regard to the aforementioned deadlines, in no event shall the State of Mississippi conduct its current primary election system after August 2007 with the exception of run-off primary elections resulting from the original primaries occurring in August 2007

The court will retain jurisdiction over this case until such time it has had an opportunity to determine whether the new system does not run contrary to the court's rulings in this case. Accordingly, and Order shall issue forthwith,

**THIS DAY** of June 8, 2007.


/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE