IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

MISSISSIPPI STATE DEMOCRATIC PARTY,
AND MISSISSIPPI STATE DEMOCRATIC
PARTY EXECUTIVE COMMITTEE,                                        PLAINTIFFS,

VS.                                             CIVIL ACTION NO. 4:06CV29-P-B

HALEY BARBOUR, GOVERNOR; JIM HOOD,
ATTORNEY GENERAL; ERIC CLARK, SECRETARY
OF STATE, IN THEIR OFFICIAL CAPACITIES
AS MEMBERS OF THE MISSISSIPPI BOARD OF
ELECTION COMMISSIONERS,                                           DEFENDANTS.

**MEMORANDUM OPINION**

These matters come before the court upon Plaintiffs' Motion for Reconsideration and to Preserve Post-Election Relief [52], Defendant Jim Hood's Rule 59(e) Motion [55], the Mississippi Republican Executive Committee's Motion to Intervene and to Alter Amended Order [57], and the Mississippi State Conference of the NAACP's Motion to Intervene and for Reconsideration [59] and Supplement to the Motion to Intervene [64]. After due consideration of the motions and the response to the Plaintiff's motion for reconsideration – no other timely responses having been filed – the court is prepared to rule.

**I. FACTUAL BACKGROUND**

In its June 8, 2007 Memorandum Opinion and June 11, 2007 Amended Order, the court denied the plaintiffs' motion for judicial notice and the defendants' motion for summary judgment, while granting the plaintiffs' cross-motion for summary judgment. Without unnecessarily repeating all the court's reasoning and rulings in the aforementioned Opinion and Amended Order, the court essentially ruled that Mississippi's primary election statute, Miss. Code Ann. § 23-15-575,

unconstitutionally infringed on the Mississippi Democratic Party's asserted First Amendment right to disassociate because there (1) was no mechanism for party registration with the option for voters to register as Democrat, Republican, or Unaffiliated and the option for the parties to choose whether to allow Unaffiliated voters to vote in their primaries, and (2) there was no method to verify the identity of a voter because there was no mandatory voter identification.

Four motions were filed after entry of the court's Opinion and Amended Order, each of which shall be considered in turn below.

## II. DISCUSSION

### A. The Plaintiffs' Motion for Reconsideration

The plaintiffs filed a motion to reconsider the court's ruling requiring voter identification and to preserve post-election relief. Although the defendants responded to said motion, the plaintiff filed no reply.

### 1. Voter Identification

With regard to photo identification, the plaintiffs argue that although they specifically requested in their Complaint for the court to enjoin the defendants from not "providing a means for the Party to verify who participated in its primary ....,"Complaint, Prayer for Relief, ¶ 4, they did not intend for this to mean photo identification, or any other type of voter identification. The plaintiffs, however, do not adequately address how one may provide a means to verify who participated in its primary without some form of identification.

The plaintiffs also argue that the court's requirement of voter identification constitutes "judicial legislation in violation of the separation of powers doctrine," arguing further that the "adoption and enactment of voter identification laws is a function over which the state legislature

should have primary jurisdiction, not a federal court." The plaintiffs neither cite any mandatory authorities for this proposition nor do they address the court's discussion in its June 8, 2007 Opinion regarding the balance between the State's constitutional right to regulate the time, place, and manner of elections versus the federal court's jurisdiction to prevent State election procedures from unconstitutionally infringing on an individual's, or party's, First Amendment right to disassociate when that asserted right is before the court in the form of a lawsuit.. The court's analysis bears repeating:

> This court is ever mindful of the important concept of federalism and the powers reserved to the States by the Tenth Amendment of the U.S. Constitution which provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." The court is also mindful of the balancing act between the State of Mississippi's constitutional right to prescribe the "Times, Places and Manner of holding Elections for Senators and Representatives," Art. I, § 4, cl.1, and the federal interest in ensuring that State election regulations do not infringe other constitutional rights when that interest is properly brought before the jurisdiction of a federal court . Although the States have the right to regulate the time, place, and manner of elections, that power "does not justify, without more, the abridgement of fundamental rights, such as the right to vote ... or, as here, the freedom of political association." *Tashjian*, 479 U.S. at 214. In the case at bar, Mississippi's interests in preserving its present primary system is substantially outweighed by the Mississippi Democratic Party's First Amendment right of association and its corollary right to disassociate.

June 8, 2007 Opinion at 32.

The very nature of the plaintiffs' suit argues that their First Amendment right to disassociate is infringed by Mississippi's current primary system because they have no mechanism available to them to identify those from whom they wish to disassociate. The reason that requiring voter identification in this instance is a proper exercise of federal power and not mere "judicial legislation" – other than the logical conclusion drawn from the Complaint's own language asking the court to enjoin the State from not "providing a means for the Party to verify who participated in its primary

3

...." – is that the constitutional right asserted in this case, the right to disassociate, presumes the ability to accurately identify voters as those with whom the plaintiffs want to associate and disassociate. This requires party registration and voter identification. As it noted in its June 8, 2007 Opinion, however, the court did not rule that voter identification was required in general elections because general elections are not at issue in this case and such a requirement is not tied to an asserted constitutional right to disassociate.

The plaintiffs also argue that the court's Opinion and Amended Order are confusing in what they require because they heavily suggest what ought to be done, yet allow the Mississippi Legislature the option of fashioning "some other form of primary system that does not infringe on political parties' right to disassociate opposing-party members from possible party-raiding." June 8, 2007 Opinion at 30.

In its June 8, 2007 Opinion, the court ruled that Mississippi's primary election system unconstitutionally infringes on the Mississippi Democratic Party's asserted right to disassociate from non-Democrats because Mississippi's current system does not have party registration or voter identification. The court agrees that given its logic, the Legislature would be hard-pressed to fashion a remedy to solve the constitutional problem without requiring party registration and voter identification. It was the court's intent to rule that in order to ensure the Democratic Party's First Amendment right to disassociate from non-members, the Legislature would have to, at minimum, require party registration and voter identification, since any other option would be inadequate to ensure the plaintiffs' right to disassociate.

The Fifth Circuit has heavily intimated that the proper course for a federal court in correcting constitutional deficiencies in election practices is to allow the Legislature a chance to correct the

problems instead of dictating the results in the first instance. In *Mississippi State Chapter, Operation Push, Inc. v. Mabus*, 932 F.2d 400 (5th Cir. 1991) the plaintiffs argued that the dual voter registration system and prohibition against satellite registration violated the Voting Rights Act of 1965. With regard to the remedy, the Fifth Circuit found "that the district court properly deferred to the Mississippi Legislature in the first instance to remedy the existing violations" and that "[v]oter registration, like reapportionment, is a function over which state legislatures should have primary jurisdiction [and] ...the district court properly gave the Mississippi Legislature an opportunity to cure the infirmities in its voter registration procedures." *Id*. at 406.

Though this court intended to require party registration and voter identification, it did not intend to completely dictate all of the specifics as to how the Legislature must remedy its current unconstitutional primary system, including the manner in which the Legislature chooses to implement party registration and voter identification. After the Legislature does decide how to remedy the current system, they must preclear it with the Justice Department and then submit the new, pre-cleared system for the court's approval.

**2. Post-election Relief**

The plaintiffs also argue in their motion for reconsideration that the court should preserve their right to post-election relief given the court has already ruled that the current primary system is unconstitutional. The plaintiffs cite fears that party-raiding will be attempted indiscriminately since the August 2007 primaries and run-off primaries will be allowed to be conducted under the current primary system even though that system has been declared unconstitutional.

The problem with the plaintiffs' request is two-fold. First, any such ruling regarding the availability of post-election relief would be premature because the primaries have not yet been held.

5

Second, and more importantly, allowing any post-election relief based on an argument that party-raiding occurred in pre-deadline primaries would be logically flawed given that, by the plaintiffs' own argument, there is no mechanism currently available to them to identify who does and does not "intend[ ] to support the nominations made in the primary in which he participates." Miss. Code Ann. § 23-15-575. There being neither party registration nor voter identification in place, there is currently no objective standard of party identification available to the Democratic Party and such would be left solely to the subjective discretion of a poll watcher or poll worker.

Accordingly, given that the current system has no party registration or voter identification, the plaintiffs may not do anything different during their pre-deadline primaries than they were allowed to do before the court's ruling since they currently have no way to constitutionally identify who intends at the moment of entry of a Democratic primary polling place to support that party in the general election.

With regard to the plaintiffs' expressed sense of urgency, it is not insignificant that the plaintiffs were aware of the rulings in *California Democratic Party v. Jones*, 530 U.S. 567, 574 (2000) (corollary of the right to associate is the right to disassociate) in 2000, yet chose not to assert their right to disassociate until the filing of their Complaint in February 2006.[1]

**B. Defendant Jim Hood and Eric Clark's Rule 59(e) Motion**

Defendant Jim Hood, one of three members of the Defendant Mississippi Board of Election Commissioners, filed a motion to alter the court's judgment pursuant to Fed. R. Civ. P. 59(e) by (1)

---

[1] Although the plaintiffs filed their Complaint on February 10, 2006, the plaintiffs' motion for preliminary injunction was not fully briefed until April 12, 2006, whereupon the court entered its Order denying the motion for preliminary injunction on May 10, 2006. The parties' cross-motions for summary judgment were not fully briefed until April 27, 2007, whereupon the court entered its original Opinion on June 8, 2007.

extending the deadline after which no primaries could be conducted under the current system from the upcoming August 2007 and run-off primary elections to the summer of 2008 and (2) by clarifying the ruling regarding voter identification. Defendant Eric Clark filed a joinder in Defendant Jim Hood's motion to alter judgment and attached an affidavit regarding the difficulties of meeting the current deadlines.

The plaintiffs filed no response to Defendants Jim Hood and Eric Clark's motion to alter judgment. Thus, the court concludes the plaintiffs do not object.

**<u>1. Extending the Deadline</u>**

Secretary of State Eric Clark avers in his affidavit that the Chairman of the State Democratic Party exercised his right to request a presidential preference primary by letter of April 18, 2007. Pursuant to Miss. Code Ann. § 23-15-1081, if either major party opts to have a presidential preference primary in the State of Mississippi, that primary will occur on March 11, 2008. Furthermore, pursuant to Miss. Code Ann. § 23-15-1083, in the event a presidential preference primary is held, the primaries for the United States Senate and House of Representatives will also occur on March 11, 2008.

> In its July 11, 2007 Amended Order, the court ruled in pertinent part:
>
> (6) After passing the appropriate legislation, and before implementing the bills creating the new primary system, the Mississippi Legislature must then apply for preclearance from the Justice Department pursuant to the Voting Rights Act of 1965 ten business days later, in no event later than April 11, 2008;
>
> (7) The State shall then update the court seventy days after submission of the plan for preclearance, in no event later than June 10, 2008, informing the court of the Justice Department's preclearance decision;
>
> (8) In no event shall Mississippi conduct its current primary election system after August 2007 with the exception of run-off primary elections resulting from the

original primaries occurring in August 2007.

Thus, Jim Hood and Eric Clark argue that since the March 2008 primaries fall within the period before the Mississippi Legislature must submit its newly passed primary system to the Justice Department for preclearance, the March 2008 primaries and any run-off primaries resulting therefrom should also be allowed to be conducted under the old system. Furthermore, Mr. Hood and Mr. Clark aver that there will be additional primaries held for municipal special charter elections during the summer of 2008 which also should be allowed to be conducted under the current system, thereby giving the Legislature approximately a year to pass, preclear, and implement the new system.

As the court observed in its June 8, 2007 Opinion, it is unreasonable to expect the State of Mississippi to pass and preclear a new primary system, gain approval by this court, and implement the system overnight. At the time the court wrote its June 8, 2007 Opinion, none of the parties had informed the court that any Mississippi political party had announced its intention to hold presidential primaries in March 2008. The court concludes that Jim Hood and Eric Clark's request to include the March 2008 and summer 2008 primaries with the August 2007 primaries to be conducted under the current system is reasonable in order to give the State of Mississippi adequate time to implement a new system.

**2. Voter Identification**

Defendant Jim Hood also asks the court to clarify its ruling regarding voter identification. More specifically in this regard, the defendant states: "It is unclear whether the Court has ordered the Mississippi Legislature to enact a voter photo identification requirement if the State retains a partisan primary system, or is the Court suggesting that voter photo identification is but one of many

remedial options that should be considered by the Legislature."

Like the plaintiffs in their motion to reconsider, Defendant Jim Hood argues that the First Amendment does not require States to adopt a photographic voter identification. Defendant Hood maintains that none of the recent cases involving voter identification have advanced a *per se* rule that closed primary elections must have voter identification, citing *Purcell v. Gonzales*, 127 S.Ct. 5 (2006) (vacating the Ninth Circuit's injunction against Arizona's voter photo requirement, but declaring "no opinion here on the correct disposition, after full briefing and argument:); *Crawford v. Marion County Elec. Bd.*, 472 F.3d 949 (7th Cir. 2007) (finding voter photo identification requirement not an undue burden on the right to vote);*Common Cause/Georgia v. Billups*, 439 F.Supp.2d 1294 (N.D.Ga. 2006) (enjoining enforcement of Georgia's 2006 voter photo identification requirement on the basis that the fee required for the identification card constituted a poll tax)[2]; *Common Cause/Georgia v. Billups*, 406 F.Supp.2d 1326 (N.D.Ga. 2005) (same). He further points out that the "well-settled principle that the nature and the scope of the remedy are to be determined by the violation mean simply that federal court decrees must directly address and relate to the constitutional violation itself," citing *Milliken v. Bradley*, 433 U.S. 267, 282 (1977).

As explained above regarding the plaintiffs' motion to reconsider, although the court has not specifically mandated a specific type of voter identification, it has ruled that because the Democratic Party's asserted First Amendment right to disassociate presumes the ability to accurately identify who is and is not a Democrat, the Legislature must at minimum require party

---

[2] The court respectfully disagrees with the court's ruling in *Common Cause/Georgia v. Billups* that because Georgia's mandatory photo identification must be purchased, the requirement constitutes a poll tax. In any event, if a State required photo identification that would include a current driver's license already purchased by the voter, or provided photo identification cards at no charge, there would be no fee that could be construed as a poll tax.

registration (with the option for the voter to register as a Democrat, Republican, or as unaffiliated) and some form of voter identification. As explained above, the nature and scope of the voter identification remedy directly addresses and relates to the constitutional violation itself, *i.e.,* because exercising the right to disassociate from non-members presumes that there is party registration and that there is a way to verify the identity of the voter.

The parties have cited no mandatory authorities supporting or defeating this court's ruling, and as explained above and in its June 8, 2007 Opinion, the ruling is grounded firmly in the constitutional logic of the plaintiffs' request for relief.

With regard to voter identification, the court affirms its ruling that some form of voter identification must be required in Mississippi's future primary system, the form of which must be just as accurate as that required for other daily functions of American life, if not more so given the solemnity of exercising the constitutional right to vote. This identification must be required of every would-be voter, and no exceptions should be allowed such as for those over 65 since one must be able to prove one is over 65 to be excepted, which would require accurate identification.[3] With these instructions, the Mississippi Legislature is left to specifically determine how to implement voter identification subject to approval by the Justice Department and this court.

## C. Mississippi Republican Executive Committee's Motion to Intervene and to Alter the Court's Ruling

The Mississippi Republican Executive Committee filed a motion to intervene and to alter the court's Amended Order by exempting them from the court's rulings since they did not request

---

[3]The same paradox exists regarding the argument that there is no evidence of voting fraud to justify a voter identification requirement. Indeed, if there is no voter identification requirement, it would be difficult to prove voter identity fraud.

to exercise their First Amendment right to disassociate non-Republicans from their primaries. No party filed a response to said motion.

**1. Motion to Intervene**

Given the liberal policy behind the Federal Civil Rules of Procedure, pursuant to Fed. R. Civ. P. 24(b), the court will allow the Mississippi Republican Executive Committee to intervene in this matter given they too are affected by the court's ruling. However, the court notes that the Committee likely had constructive notice that the instant lawsuit would affect them when it was originally filed, given that the very nature of the plaintiffs requested relief – *i.e.*, to hold the entire Mississippi primary election system unconstitutional – would logically apply to any party in Mississippi.

**2. Motion to Alter the Amended Order**

In its motion, the Committee seeks to alter paragraph 8 of the Amended Order – "In no event shall Mississippi conduct its current primary election system after August 2007 with the exception of run-off primary elections resulting from the original primaries occurring in August 2007" – to make clear that it does not restrict the right of the Committee to conduct Republican primaries pursuant to existing Mississippi law.

However, in the Committee's brief they state: "Obviously, if the Legislature complies with this Court's directive to pass new laws, then Republican primaries, like all party primaries, will become subject to the new statutes; the Republican Committee asks nothing more than to abide by the old statutes in the meantime."

These two positions appear to contradict each other. Nevertheless, the argument is moot insofar as the court has already ruled that the August 2007, March 2008, and summer 2008

primaries may be conducted under the current system in order to allow the Legislature adequate time to pass, preclear, and implement the new system after approval by this court.

The court notes, however, that there is merit to the Committee's argument evincing their desire to allow all voters to vote in their primary given that the Mississippi Republican Party did not assert their right to disassociate. Since a person, including a political party, owns his or her constitutional rights, one may waive that right assuming there is no authority to the contrary. In *Clingman v. Beaver*, 544 U.S. 581 (2005), the Libertarian Party of Oklahoma wanted to allow registered Democrats and Republicans to vote in their primary in addition to registered Libertarians. Oklahoma law, however, had a semiclosed primary system "in which a political party may invite only its own party members and voters registered as Independents to vote in the party's primary." *Id*. at 584. The Court concluded that Oklahoma's system did not severely burden the associational rights of the State's citizenry. *Id*. at 593. However, the Court also concluded that "Oklahoma remains free to allow the LPO [Libertarian Party of Oklahoma] to invite registered voters of other parties to vote in its primary. But the Constitution leaves that choice to the democratic process, not to the courts." *Id*. at 598. This language leaves room for the State to allow a given party to permit all registered voters to vote in that party's primary.

In this State, the Mississippi Democratic Party through this lawsuit chose to assert its right to disassociate from non-members. This does not mean that the Mississippi Legislature cannot allow the Mississippi Republican Party to choose to waive its constitutional right to disassociate by allowing the Republicans to invite all voters to vote in their primary, whether registered as Democrats, Republican, or unaffiliated – all assuming a voter is only allowed to vote in one primary. According to *Clingman*, it is up to the Legislature to choose whether parties can allow all

registered voters to vote in their primary.

The court notes further that in the event the Legislature decided to allow the Democrats and Republicans the right to choose between (1) allowing only registered-party members, (2) allowing registered-party members and unaffiliated voters, or (3) allowing all registered voters to vote in their respective primaries, the party's decision would have to be made on a state-wide basis. Otherwise, it would severely infringe on the citizenry's constitutional right to vote if a party could decide, for example, to allow only registered-party members in one area of Mississippi to vote, but not in others.

**D. Mississippi State Conference of the NAACP's Motion to Intervene and to Reconsider**

The Mississippi State Conference of the NAACP filed a motion to intervene as a non-aligned party in order for the court to decide upon their motion to reconsider the court's ruling regarding mandatory voter identification.

**1. Motion to Intervene**

The court agrees that the Fifth Circuit's decision in *Stallworth v. Monsanto Co.*, 558 F.2d 257, 270 (5th Cir. 1977) appears to allow a non-aligned party to intervene in the remedial stages of a lawsuit, assuming that the Rule 24(b) factors weigh in favor of intervention. Having considered those factors, the court concludes that the Mississippi State Conference of the NAACP should be allowed to intervene.

**2. Motion to Reconsider Voter Identification Ruling**

The NAACP asks the court to reconsider pages 30-32 of its June 8, 2007 Opinion and delete all references to voter photo identification and also to voter re-registration, or alternatively to clarify that the Court is not requiring that these measures be included in any remedy that maintains party

13

primaries as part of Mississippi's electoral system. The NAACP argues that the voter identification and re-registration rulings:(1) impose upon the State a voter photo identification requirement that is not necessary to enforce the Constitution; (2) are beyond the scope of the Court's power to remedy the Constitutional violation found; (3) are contrary to Mississippi law, which imposes no such requirements; and (4) could harm participation of many voters who are elderly and poor, a disproportionate number of whom are black.

The court has already addressed the first three of these arguments above. With regard to the last argument, the NAACP has not demonstrated the precise harm that would result in requiring voter identification in a world in which identification is generally required for everyday American life. In any event, the Legislature has not yet chosen which type of identification it wishes to require for primary elections, nor has the Justice Department or the court approved the Legislature's choice. Thus, the NAACP arguments against the court's ruling that some form of substantially accurate form of identification is required are premature.

Similarly, the NAACP's argument that re-registration of all 1.7 million of Mississippi's voters is improper is premature given that the Legislature has not yet determined the specifics as to how it will implement the State's new system.

### III. CONCLUSION

For the reasons discussed above, the court concludes that Plaintiffs' Motion for Reconsideration and to Preserve Post-Election Relief [52] should be denied; Defendant Jim Hood's Rule 59(e) Motion [55] should be granted insofar as it seeks to extend the deadline in paragraph 8 of the court's June 8, 2007 Opinion from August 2007 to August 31, 2008; the Mississippi Republican Executive Committee's Motion to Intervene and to Alter Amended Order [57] should

be granted insofar as it seeks to intervene and to have the deadline moved but denied insofar as it seeks to exempt Republicans from the court's rulings; and the Mississippi State Conference of the NAACP's Motion to Intervene and for Reconsideration [59] should be granted insofar as the NAACP is allowed to intervene but denied insofar as it seeks to have the court delete reference to voter identification and re-registration. Accordingly, an Order shall issue forthwith,

**THIS DAY** of July 17, 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE
